IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL E. RAMSEUR #369-261
        Plaintiff,                     *

     v.                                  *    CIVIL ACTION NO. RDB-12-629

MICHAEL STOUFFER, COMMISSIONER   *
  OF CORRECTIONS
GARY D. MAYNARD, PUBLIC SAFETY    *
  AND CORRECTIONAL SERVICES
MARION E. TUTHILL, WARDEN          *
JOHN S. WOLFE, WARDEN
        Defendants.               *

**MEMORANDUM OPINION**

Pending are dispositive motions filed on behalf of Defendants (ECF Nos. 10 and 19), which shall be construed as unopposed motions for summary judgment pursuant to Fed. R. Civ. Pro. 56.[1] Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

**Background**

Plaintiff, currently incarcerated at North Branch Correctional Institution ("NBCI"), Maryland's maximum security prison, seeks money damages as a result of his transfer from the Baltimore City Detention Center ("BCDC") to the Jessup Correctional Institution ("JCI") in 2011. Plaintiff complains that while awaiting trial, he was transferred to a Division of Correction ("DOC") facility, placed on administrative segregation, and forced to share a cell with Kevon Jefferson, a fellow transferee from BCDC who had been convicted of murder and

---

[1] Plaintiff was given the requisite notice and an opportunity to oppose the dispositive motions, in compliance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and has failed to do so.

was awaiting sentencing.  ECF No. 1 at 3.  Plaintiff alleges that he was assaulted by Jefferson and suffered a broken hand. *Id.*  Plaintiff claims Defendants were deliberately indifference to his safety by housing him with Jefferson and in doing so, violated his Fifth and Fourteenth Amendment rights and Articles 16, 24, and 25 of Maryland's Declaration of Rights. *Id.* at 5, 9. Plaintiff also contends his due process rights were violated because he was transferred from a pretrial detention facility to a prison facility without notice.  *Id.* at p. 6.

      The uncontroverted record indicates that on January 14, 2011, Plaintiff arrived at JCI. ECF No. 19, Exhibit 1, Offender Traffic History. On January 18, 2011, a correctional officer found Plaintiff fighting with cellmate Jefferson. *Id.,* Exhibit 2, Notice of Inmate Rule Violation; Exhibit 3, Shift Commander's Daily Report. When seen by medical personnel the next day, Plaintiff stated that he injured himself during a fight. *Id.,* Exhibit 4, Provider Sick Call, January 19, 2011. Plaintiff sustained an injury to his right hand known as a "boxer's fracture." *Id.,* Exhibit 4; Exhibit 5, Medical Chart Update.  By April 14, 2011, the injury had healed.  *Id.,* Exhibit 6, Provider Sick Call, April 14, 2011.  Plaintiff later admitted he and Jefferson were wrestling because Inmate Jefferson had written something in or on their shared cell that had aggravated Plaintiff.  *Id.,* Exhibit 7, Inmate Hearing Record at 2-3.

      Plaintiff filed a Request for Administrative Remedy regarding this incident on February 3, 2011, stating he was housed with an inmate that "was not supposed to be housed with me," and that he had broken his hand defending himself from his cell mate. *Id.,* Exhibit 9, Request for Administrative Remedy at 1. Plaintiff's request was dismissed by Warden Wolfe, who wrote that there was no evidence to support Plaintiff's allegation that he was housed with an enemy. *Id.* at p. 2.  There is no evidence to suggest that Plaintiff appealed the Warden's dismissal of his administrative complaint.   Defendants indicate that Plaintiff never filed a request for

administrative remedy ("ARP") concerning the allegations raised in the Complaint. ECF No. 16, Exhibits L and O. Defendants raise this failure to exhaust administrative remedies as an affirmative defense in this case. ECF Nos.10 at 5 and 19 at 13.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to….the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Prior to examining the merits of the allegations, the Court must first examine Defendants' assertion that Plaintiff's case should be dismissed in its entirety due to Plaintiff's failure to exhaust available administrative remedies. The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations. His complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative

review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Maryland provides a three-step grievance process: request for administrative remedy to the Warden of the institution (commonly referred to as an ARP); an appeal of administrative dismissal to the Commissioner of Corrections; and submission of the grievance to the Inmate Grievance Office (IGO). *See Chase v. Peay*, 286 F. Supp. 2d 523, 529 (D. Md. 2003). Plaintiff filed a Request for Administrative Remedy at JCI on February 3, 2011. ECF No. 19, Exhibit 9. The allegations were dismissed by Warden Wolfe as meritless on February 10, 2011. *Id*. The Executive Director of the Inmate Grievance Office, Scott Oakley, affirms that the Inmate Grievance Office has not received a complaint from Plaintiff regarding the matters alleged in this case. ECF No. 10, Exhibit 10, Declaration of Scott Oakley.

Given Plaintiff's failure to pursue administrative remedies, his case must be dismissed. Defendants' dispositive motion shall be granted. A separate order follows.


October 3, 2012                           /s/_____
Date                                      RICHARD D. BENNETT
                                          UNITED STATES DISTRICT JUDGE